# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

A.B., a minor; J.B., a minor, and EDWIN )
BUSH, in his individual capacity and as )
father and next friend for J.B., and A.B., )
minors, )
                                   )    Case No.1:20-cv-6634
             Plaintiffs, )
     v.                    )    Hon.
                                    )
THE HON. JOHN T. CARR, Associate )
Judge of the Circuit Court of Cook County, )
in his official capacity )
                                    )
           Defendant. )

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### I.    INTRODUCTORY STATEMENT

1. J.B., A.B. and Edwin Bush have been completely denied contact entirely for over two years despite their father not being found unfit or an endangerment. The United States Supreme Court has repeatedly held there is no compelling government interest to infringe on the parent-child fundamental liberty interest absent such a finding. When a state shifts custody from one parent to another, the government has implicated a fundamental liberty interest of the parent who loses custody. *B.S. v. Somerset*, 704 F.3d 250, 272 (3rd Cir. 2013). Consistent with constitutional law, Illinois law entitles a non-custodial parent reasonable visitation absent a finding of unfitness. 750 ILCS 5/602.8(a).

2. Edwin is the Respondent in an ongoing state dissolution of marriage and custody proceeding in Cook County Circuit Court's Domestic Relations Division, in which

1

The Hon. John T. Carr is assigned to the case. This case was initiated by Erika Bush on February 18, 2017. *In re Marriage of Bush*, 2017 D2 30075.

3. Edwin Bush is not only J.B. and A.B.'s father, he is their attorney of record, pursuant to a March 18, 2020 Order by the Seventh Circuit Court of Appeals. They are currently plaintiffs in *J.B. et al v. Woodard et al*, (7th Cir. 20-1212, 1:19-cv-4065), which is scheduled for oral argument on December 16, 2020. At issue is whether "Our Federalism" underpinning the *Younger* abstention doctrine applies at all to privately initiated domestic relations civil cases. The second issue is whether standing can be acquired against other state actors to challenge a state statute when the state actor with normally "some connection its enforcement," a state judge, is immune from suits in equity in their adjudicatory capacity under 42 U.S.C. § 1983 and *In re Justices of the Supreme Court of Puerto Rico*, 695 F.2d 17 (1st Cir. 1982).

4. Plaintiffs maintain that Judge Carr contributed to the substantive due process damages in Count II of *J.B. et al v. Woodard et al*, although he is not a named party and immune from compensatory damages

5. In this matter, Plaintiffs complain that Judge Carr has retaliated against them for bringing the aforementioned suit by completely denying them contact and causing continuing irreparable harm They further complain Judge Carr intentionally interfered with their ability to prosecute the aforementioned lawsuit, and abused his power as a state court judge by continually violating their due process rights while exceeding his adjudicatory capacity.

6. Despite a December 13, 2019 Order from the state appellate court to hold a hearing after vacating the parenting time portion of the February 13, 2019 judgment, Judge

Carr has refused to hold the hearing for almost a year. On October 26, 2020, the state appellate court ruled it lacks jurisdiction to enforce its prior order. On September 3, 2020, the Illinois Supreme Court refused to mandate a temporary parenting schedule or a prompt hearing on remand.

7. This Complaint seeks 1) declaratory relief that Plaintiffs' fundamental constitutional liberty interests to familial integrity, privacy, autonomy and association were totally infringed for over two years and continue to be infringed by Judge Carr. Plaintiffs seek 2) injunctive relief to enjoin the ongoing unconstitutional actions taken by Judge Carr in his enforcement and final policymaking capacity that infringe on their fundamental liberty interest to familial integrity, privacy, autonomy and association. 3) Plaintiffs further seek injunctive relief on behalf of themselves and others similarly situated against unconstitutional policies and practices of the Cook County Domestic Relations Division, including those flagrantly used and abused by Defendant.

## II.    JURISDICTION AND VENUE

8. This Court has jurisdiction over Plaintiffs' claims brought pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act.

9. This Court has jurisdiction for all four counts pursuant to 42 U.S.C. § 1983 and pursuant to 28 U.S.C. §§ 1331 and 1343.

10. Venue is proper in this district because:

(a) The Northern District of Illinois is the judicial district in which substantially all the events or omissions giving rise to Plaintiffs' claims occurred; and

(b) Defendant is found or is employed, or at the time of the incidents giving rise to this suit were so employed, in the Northern District of Illinois.

3

11. The typical bars to jurisdiction from federal complaints arising from state domestic relations proceedings do not apply.

12. Absolute judicial immunity does not apply to declaratory relief under 42 U.S.C. § 1983. Absolute immunity also does not apply to injunctive relief under 42 U.S.C. § 1983 when a state judge acts outside their adjudicatory capacity. Rather, administrative, policymaking and enforcement actions fall outside a state judge's adjudicatory capacity.

13. Sovereign immunity under the Eleventh Amendment does not apply to prospective relief that does not seek compensatory damages.

14. The Rooker-Feldman jurisdictional bar does not apply because Plaintiffs are not seeking review of an order or judgment. Their complaint arises from the lack of an order or judgment, and challenge unconstitutional policies and practices of Judge Carr and the Cook County, Illinois Circuit Court.

15. The domestic relations exception to federal jurisdiction does not apply because Plaintiffs are not requesting this court to issue a dissolution of marriage decree, enter or alter a child support or custody order, or distribute marital property.

16. The Anti-Injunction Act 28 U.S.C § 2283 does not apply because 42 U.S.C. § 1983 expressly authorizes injunctions to protect civil rights, and Plaintiffs are not seeking to enjoin the proceeding. Rather, they seek to enjoin unconstitutional policies and practices taken and enforced during the proceeding. They further seek to enforce affirmative procedural and substantive obligations derived from vested legal rights.

17. There are no applicable abstention doctrines to bar jurisdiction, including *Younger* because that doctrine does not apply at all to privately initiated domestic relations

proceedings. The state is not a party to the ongoing state proceeding, Plaintiffs are not targets of any ongoing state initiated proceedings, and the post-dissolution proceedings are not quasi-criminal in nature. Moreover, Plaintiffs exhausted their state-level remedies, both in the Illinois Appellate and Supreme Court. That the state appellate courts failed to review some of Plaintiffs' points means an extraordinary circumstances exception to *Younger* applies.

## III. PARTIES

18. Infant Plaintiff A.B., born in October 2015, is the daughter of Plaintiff Edwin Bush. At all times prior to and after the actions complained of herein, A.B. resided with Plaintiff or her natural mother in unincorporated Cook County, Illinois. Pursuant to Federal Rule of Civil Procedure 17(c), Plaintiff A.B. proceeds here by her father and next friend, Edwin Bush.

19. Infant Plaintiff J.B., born in July 2011, is the son of Plaintiff Edwin Bush. At all times prior to and after the actions complained of herein, J.B. resided with Plaintiff or her natural mother in unincorporated Cook County, Illinois. Pursuant to Federal Rule of Civil Procedure 17(c), Plaintiff J.B. proceeds here by his father and next friend, Edwin Bush.

20. Plaintiff Edwin Bush ("Edwin") is the father and next friend of infant plaintiffs J.B. and A.B. At all times prior to and after the actions complained of herein, Edwin Bush resides in unincorporated Cook County, Illinois.

21. Defendant, The Hon John T. Carr is an Associate Judge in the Cook County Circuit Court's Domestic Relations Division. At all relevant times, Defendant presided over the domestic relations case *In re Marriage of Bush,* and is responsible for enforcing

the Illinois Marriage and Dissolution of Marriage Act, the Domestic Violence Act, other Illinois and Cook County laws, and for not infringing the Constitutional rights of parties and children before him. He is sued in his official capacity.

22. At all times relevant to this complaint, Defendant acted under color of state law.

23. Defendant's actions have caused severe, including ongoing irreparable harm to Plaintiffs.

24. The Defendant's violations of Plaintiffs' fundamental liberty rights to familial association, integrity, privacy and autonomy are ongoing and give rise to a claim for declaratory and injunctive relief as to which there is no adequate remedy at law.

## IV.  STATEMENT OF FACTS GIVING RISE TO PLAINTIFFS' CLAIMS:

### A. Allegations Of Unconstitutional Policies and Practices By Defendant and the Cook County Domestic Relations Division

#### 1. 28 Unconstitutional Policies and Practices By Cook County Domestic Relations Courts

25. 1) Fundamental parenting rights are either unconstitutionally denied completely or restricted for prolonged periods of time without a finding of unfitness or endangerment against the targeted parent.

26. 2) Fundamental parenting rights are unconstitutionally infringed for prolonged periods of time without a motion or petition seeking a finding of unfitness or endangerment.

27. 3) Fundamental parenting rights are unconstitutionally infringed for prolonged periods of time without notice of motion or petition seeking a finding of unfitness or endangerment.

28. 4) Fundamental parenting rights are unconstitutionally infringed for prolonged periods of time without full evidentiary hearings required by state law or constitutionally required minimal due process, or post-deprivation hearing rights.

29. 5) Fundamental parenting rights are unconstitutionally infringed by failing to make findings that parenting time with the targeted parent would harm the child, or not be in child's best interest.

30. 6) Fundamental parenting rights are unconstitutionally infringed by courts withholding access to children without due process or findings of unfitness until parents engage in forced confessions (apologies), or agree to a restriction when they have committed no offense.

31. 7) Fundamental parenting rights are unconstitutionally infringed by domestic relations court judges exceeding their adjudicatory capacity by issuing orders *sua sponte* without written notice, motion, hearing or finding, thus inserting themselves in an enforcement capacity.

32. 8) Fundamental parenting rights are unconstitutionally infringed by unwritten rules and policies by judges acting as final policymakers exploiting the already vague best interest of the child standard, leaving parents of ordinary intelligence unable to predict what conduct could lead their fundamental parenting rights to be infringed.

33. 9) Fundamental parenting rights are unconstitutionally infringed by judges denying or restricting parenting time for conduct that would not merit a restriction under any circumstance or standard.

34. 10) Fundamental parenting rights are unconstitutionally infringed by judges denying or restricting parenting time of innocent parents without due process, and then forcing

parents to recover their parenting rights by proving a substantial change in circumstances.

35. 11) Fundamental parenting rights are unconstitutionally infringed by judges entering final custody judgments that "reserve" or completely deny parenting time of innocent parents with conditions impossible to be satisfied under the standards required to modify a judgment.

36. 12) Fundamental parenting rights are unconstitutionally infringed by judges engaging in policymaking by forcing parents not found unfit to engage in prolonged "reunification counseling" that is not authorized by statute or local rules, after their parenting rights were infringed without due process.

37. 13) Fundamental parenting rights are unconstitutionally infringed by judges awarding custody to one parent in a judgment and denying the fit non-custodial parents any rights to parenting time, participate in extra-curricular activities, educational and health records, or to contest a relocation.

38. 14) Fundamental parenting rights are unconstitutionally infringed by state civil enforcement authorities conducting investigations (searches) in domestic relations cases without a statutorily and constitutionally required warrant by any judge or exigent circumstances.

39. 15) Fundamental parenting rights are unconstitutionally infringed by judges denying or restricting parenting time summarily based upon temporary findings or recommendations of state civil enforcement agencies, and those rights are not restored when those findings are later unfounded and reversed.

40. 16) Fundamental parenting rights are unconstitutionally infringed by judges entering orders of protection under the vague best interest of the child standard, using the preponderance of the evidence standard, applying speculative statutory "likely to" not act in a child's best interest on a strict liability basis without any scienter, or due process.

41. 17) Fundamental parenting rights are unconstitutionally infringed by extending emergency orders of protection beyond the statutory limitations without consent or providing a hearing.

42. 18) Fundamental parenting rights are unconstitutionally infringed by extending out orders denying or restricting parenting time "until further order of the court," including beyond statutory limitations without a hearing.

43. 19) Fundamental parenting rights are unconstitutionally infringed solely on the basis of uncorroborated and unsubstantiated hearsay testimony of a child by a party opponent.

44. 20) Fundamental parenting rights are infringed by these courts entering orders without Guardian *ad Litems* conducting statutorily required investigations, including interviewing children and parties.

45. 21) Fundamental parenting rights are unconstitutionally infringed by totally denying parents an opportunity to present a motion and be heard, including after their substantive due process rights have already been implicated.

46. 22) Fundamental parenting rights are unconstitutionally infringed by domestic relations courts failing to maintain a record of their proceedings and denying access to appellate courts.

47. 23)  Fundamental parenting rights are unconstitutionally infringed by domestic relations courts threatening indigent persons with contempt of court for attempting to preserve a record of the proceedings by their own personal recording.

48. 24)  Fundamental parenting rights are unconstitutionally infringed by domestic relations courts and its officers chilling First Amendment and due process rights of parents to make their own recordings of themselves and their children, to preserve evidence and defend their fundamental rights with that evidence.

49. 25) Fundamental parenting rights are unconstitutionally infringed by judges refusing to recuse themselves or substitute other judges for cause for violating minimal procedural due process rights and prolonged substantive due process violations as actual judicial bias and prejudice.

50. 26)  Fundamental parenting rights are unconstitutionally infringed by judges retaliating and abusing their power against parents who personally object to their constitutionally protected rights being infringed.

51. 27)  Fundamental constitutional rights of expression and speech or infringed by domestic relations courts retaliating against parents who protest these practices online or otherwise in public.

52. 28) Fundamental constitutional rights of parents are infringed when the entire Illinois judicial system closes ranks and covers up their systemic constitutional violations, rather than remedying it.

53. Since the state dissolution of marriage and custody proceeding began in 2017, every single one of the previously enumerated unconstitutional policies and practices were inflicted on Plaintiffs, sometimes on multiple occasions.

## 2. There Is No Adequate Internal and Structural Supervision Of These Widespread Systemic Violations

54. Domestic relations attorneys are officers of the court, and often act as court-appointed representatives for children. They are an insular group who are aware of unwritten customs, policies, practices and usages of domestic relations courts that outsiders, particularly *pro se* litigants, would never know. These attorneys are resigned to the unconstitutional policies and practices, and tell Plaintiff that these violations "happen every day," and that domestic relations judges routinely violate statutes and the constitution. These attorneys are incentivized for these unconstitutional policies and practices to continue because they bill substantially to cause and then remedy these violations. In social media settings, these violations are captured in the thousands.

55. The aforementioned constitutional violations are rarely addressed or remedied by the state appellate courts, and are too numerous and repetitive to appeal every violation. State appellate courts either lack jurisdiction to hear appeals of interlocutory orders, there is no appeal as of right in most circumstances, or a party requires the consent of the circuit judge to appeal under Supreme Court Rule 304(a). Moreover, circuit courts fail to maintain a recording system to maintain a record, and often issue substantive orders when there could be no foreseeable need for a court reporter with no motion set for hearing, called "status calls."

56. The Illinois Judicial Inquiry Board does not investigate a complaint for at least nine months due to a backlog of complaints. When it does investigate, it usually does not take any disciplinary action, including public rebukes or admonitions, unless there is a clear criminal violation outside of a judicial capacity. The Judicial Inquiry Board lacks authority to take remedial measures for parents impacted by these violations.

11

The ineptness of the Judicial Inquiry Board was noted in a recent Reuters investigation, in which it acknowledged it completely lost or misplaced hundreds of complaints.

57. The Presiding Judge of the Domestic Relations Division leaves final policymaking to individual domestic relations judges, which maintain complete autonomy over their individual courtroom. The presiding judge acts as an administrator and does not conduct supervision to ensure that individual judges are protecting individual constitutional rights.

58. The Chief Judge of Cook County selects the Presiding Judge of the Domestic Relations Division, yet likewise acts as an administrator and does not supervise the Presiding Judge to ensure the division is protecting individual constitutional rights.

59. The entire state judicial system has been compromised by domestic relations attorneys and "cottage industries" of peripheral "professionals" who aid and abet parents intent on infringing on the fundamental rights of the other parent, often with intentionally false allegations. In concert, they promote prolonged, contentious and expensive litigation and countermand the policy objectives of the State of Illinois embedded in 750 ILCS 5/102, which is solely to ensure the children have maximum contact with both parents.

60. Approximately 40 percent of all children are born out of wedlock, and another 50 percent of marriages result in dissolution. Millions of families throughout the country have been thrown into a state system with almost no federal supervision to ensure federal individual rights are protected. The result is systemic wealth extraction by white collar "professionals" that equates to child trafficking, with children of fit

parents being unlawfully seized and sold back to the fit parent with unwanted and actually harmful "services." These parents become dependent on public resources, lose employment prospects due to false and malicious orders of protection, and unnecessarily require state and federal aid.

**B. TIMELINE -- The State Dissolution Proceeding – Plaintiffs' Parenting Time Restricted Almost Continuously Since The 2017 Initiation Of the Proceeding With No Endangerment Finding**

**1) Constitutional Violations From 2017-2018 – Judge Bernstein's Three Unconstitutional *Sua Sponte* Orders And Continual Procedural And Substantive Due Process Violations**

61. On February 18, 2017, Erika Bush initiated a dissolution of marriage and custody proceeding in Cook County, Illinois. Judge Jeanne Cleveland Bernstein was assigned to this case.

62. Edwin was the primary caretaker of J.B. for 3.5 years and wants to be an active an engaged father for both children. He is an attorney by profession, with a background in trade policy and federal lobbying.

63. In early 2017, Edwin wanted to have a 50/50 temporary parenting schedule. Erika wanted Edwin to have almost no parenting time.

64. Edwin had two overnights per week with J.B. and between three and eight hours per week with A.B. from March 7, 2017 until June 7, 2018.

65. Edwin's parenting time with A.B. was considered restricted under Illinois law. Illinois law defines a restriction as a denial of parenting time, supervised parenting time, or no overnight visitation.

66. Edwin was entitled under 750 ILCS 5/602.10(b) to a hearing on parenting time within 120 days. There was never a hearing on parenting time, despite Edwin filing three

motions for a hearing and continually objecting through his counsel throughout 2017. Erika never filed a motion to restrict Edwin's parenting time under 750 ILCS 5/603.10 of the Illinois Marriage and Dissolution of Marriage Act.

67. On April 27, 2017, Judge Bernstein appointed Dr. Sol Rappaport to conduct a "custody evaluation" on her own motion, *sua sponte*, over Edwin's objection. Neither party filed a motion for a custody evaluation, which ended up totaling $17,000.

68. On April 27, 2017, Edwin and Erika's former counsel agreed that he would have A.B. for Saturday overnight in court on a scheduled status date. An order was entered that date to that effect, and the former Child Representative orally informed Judge Bernstein of the new schedule.

69. On May 1, 2017, Erika Bush filed an "emergency motion to correct scriveners' error," alleging her own counsel incorrectly incorporated a single weekly overnight into the April 27, 2027 Order.

70. On May 2, 2017, Judge Bernstein denied the motion, as the judge stated she kept notes of the Child Representative's oral representation five days prior. Edwin had to get back to work, and left the Daley Center courthouse after Judge Bernstein denied the only matter eligible for consideration.

71. When Edwin left the courthouse, Erika's former counsel and the former child representative, went back into Judge Bernstein's courtroom and informed the judge that Edwin had left the courthouse. Despite Edwin not required to be in court at all to insufficient notice of motion under Cook County local rules, Judge Bernstein then removed the overnight on her own motion, after denying the emergency motion to correct scriveners error. Both the denial of the motion and the *sua sponte* act was

reflected in a signed May 2, 2017 Order. Edwin was back to three hours per week with A.B., without ever being accused of abuse or neglect, only that Erika's counsel made an alleged drafting error in the prior order. The May 2, 2017 Order was null and void.

72. On May 24, 2017, Edwin's parenting time was increased to eight hours per week with A.B. The Saturday overnight was not reinstated, over Edwin's objection.

73. On June 9, 2017, Erika Bush sought an emergency order of protection, seeking to list herself, J.B. and A.B. as protected parties. Judge Gregory Ahern denied the petition as not an emergency.

74. Edwin endured six more months with a null and void temporary parenting order. On November 4, 2017, Edwin kept A.B. overnight, arguing the orders restricting his parenting time violated his fundamental constitutional procedural and substantive rights.

75. On November 7, 2017, Erika filed an emergency contempt petition for Edwin having the single overnight with A.B. on November 4, 2017.

76. On November 9, 2017, Edwin was not at court and represented by counsel. Edwin's counsel objected that Illinois case law holds an alleged prior violation of a custody order cannot be enforced by contempt. Judge Bernstein denied the petition for contempt but then *sua sponte* suspended Edwin's parenting time with J.B. and A.B. entirely. Judge Bernstein found Edwin to be an endangerment under 750 ILCS 5/603.10 because he violated the void May 24, 2017 order, but did not hold a hearing as required by that statute. There was no motion pending alleging endangerment, and the November 9, 2017 Order was also null and void.

77. On November 12, 2017, Dr. Sol Rappaport finished his custody evaluation and cited Judge Bernstein's *sua sponte* endangerment finding she made three days prior, totally prejudicing the custody evaluation. Dr. Rappaport found Edwin's parenting time with A.B. was restricted for the duration of the proceeding and there was no basis for the restriction.

78. On December 5, 2017, Judge Bernstein denied she made an endangerment finding on November 9, 2017, and it was reflected in that order.

79. On December 7, 2017, Edwin's parenting time with J.B. and A.B. was reinstated by agreed order. Erika's former counsel informed the court that J.B. and A.B. were constantly crying to see their father.

80. On March 26, 2018, Edwin filed a Petition for Substitution of Judge for Cause. Judge Bernstein recused herself that morning, after never holding a hearing on parenting time for over a year she presided over the dissolution proceeding. When Judge Bernstein recused herself, Edwin still had eight hours per week with A.B., and two overnights with J.B., ignoring Dr. Rappaport's custody recommendation she ordered *sua sponte*.

81. Judge Jeanne Cleveland Bernstein was the very trial judge in *Suriano v. Lafeber*, 902 N.E.2d 116 (2008), a published opinion in which the First District Appellate Court held state courts exceed their jurisdiction when they enter orders without a justiciable matter set for hearing, and violate a party's Constitutional procedural due process rights. Ten years later, Judge Bernstein was reversed in *Jonas v. Cardova*, 2018 Ill. App. 172871 (Ill. App. Ct. 2018), for again violating a party's due process rights again without a justiciable pleading.

82. Edwin sent Judge Bernstein's recusal order and his March 26, 2018 substitution of judge for cause petition to the Illinois Judicial Inquiry Board. Nine months after receiving the complaint, the Judicial Inquiry Board opened an investigation but did not disclose its findings or take any public action against Judge Bernstein.

### 2) Judge John Carr Assigned to the Dissolution Proceeding

83. On March 26, 2018, Judge Marya Nega was assigned to this case. On May 22, 2018, Edwin's motion for change in temporary allocation of parental responsibilities under 750 ILCS 602.7 was presented to Judge Nega. Edwin and Erika's counsel met in Judge Nega's chambers where an agreement was reached for an unrestricted parenting schedule, which Judge Nega approved. Erika did not agree to Edwin having parenting time every other weekend and one day during the week. When Judge Nega learned Erika did not agree, she recused herself.

84. On May 22, 2018, the dissolution case was transferred to Judge John. T. Carr

85. On June 7, 2018, Judge Carr entered a parenting schedule where Edwin would have J.B. and A.B. every other weekend and one day during the week. In addition, both Edwin and Erika would have two weeks of summer vacation, and would have daily phone time when the children were with the other parent. An order was entered that date over Erika's objection.

86. Edwin's parenting time was no longer unconstitutionally infringed for the first time since the case was initiated on February 18, 2017, absent the four-day period from April 27, 2017 to May 1, 2017. However, this would last for about four months.

### 3) Plaintiffs' Rights Unconstitutionally Infringed By Judge Carr From November 30, 2018 To The Present

a.  <u>Factual Predicate To The Procedural Due Process Violation in  *J.B. et al v. Woodard*
*et. al.* and the November 30, 2018 Due Process Violation</u>

87. During Edwin's second week of summer parenting time, he spent a week on a lake
house in the north woods of Wisconsin with J.B., A.B., his girlfriend, her two
daughters, his father, mother and step-mother.  They rented a boat and took the
children tubing twice, had campfires, went shopping and the children played together.

88. On August 3, 2018, while returning to their lake cabin from the Black Bear Restaurant
in Minocqua, Wisconsin at approximately 9:00 p.m., J.B. was riding in the passenger
seat of Edwin's girlfriend's Subaru and exhausted after a long day.  Edwin was
driving.  His girlfriend, her two daughters and A.B. were in the back seat.

89. J.B. asked for Edwin's smart phone in the car and Edwin refused because J.B. was
not acting appropriately at dinner.  Edwin uncharacteristically refused to give J.B. his
smart phone, and J.B. then uncharacteristically threw a tantrum and began punching
Edwin in his right thigh while he was driving.  Edwin pulled over to the side of the
rural road and stopped the car.  J.B. proceeded to kick his girlfriend's glove
compartment with both feet.  While J.B.'s arms and legs were still flailing, Edwin
placed his hand behind J.B.'s neck, and admonished him not to hit the driver of a
moving car.  J.B. was not harmed or crying, as Edwin's girlfriend attested in a
November 5, 2018 affidavit.

90. Two minutes later, Erika called Edwin and asked to speak to J.B.  Edwin gave J.B.
the phone without hesitation and J.B. spoke to Erika for approximately eight minutes.
At the end of the call, Edwin and his girlfriend heard J.B. tell Erika that Edwin touched
J.B.'s neck.  The vacation concluded three days later without incident, and J.B. had

no memory of the non-incident. The next morning, J.B. and Edwin were on video hugging each other exchanging warm words.

91. On August 16, 2018, the parties in the dissolution case appeared before Judge Carr on a status call and neither Erika or her counsel made any allegations against Edwin, orally or in writing.

92. On October 1, 2018, Erika took J.B. to Dr. Reginald Pacheco, a recent graduate, in Park Ridge because J.B.'s school indicated he was not always behaving. Erika Bush did not notify Edwin or the Guardian *ad Litem*, Steve Wasko, she had unilaterally selected a counselor.

93. During their intake session with J.B. present, Erika alleged to Dr. Pacheco that Edwin choked J.B. two months prior while on vacation in Wisconsin.

94. Dr. Pacheco indicated he is a mandated reporter pursuant to the Illinois Abused and Neglected Child Reporting Act (ANCRA), and he was required to call the Illinois Department of Children and Family Services (DCFS). Erika urged Dr. Pacheco to call DCFS and investigate Edwin.

95. On October 2, 2018, Tiffany Woodard, an investigator with DCFS interviewed J.B. alone in the principal's office at his school, investigating a two-month old allegation in Wisconsin without a warrant. The principal was not at school. Woodard did not inform J.B. he had a right to request a third party join the interview. J.B. did not know why Woodard was interviewing him.

96. On October 3, 2018, Tiffany Woodard interviewed Erika at her condominium in Park Ridge. Erika re-alleged that Edwin choked J.B. two months prior in Wisconsin.

97. On October 3, 2018, Tiffany Woodard orally informed Edwin she was investigating a choking allegation that allegedly occurred in Wisconsin Dells, Wisconsin in August.

98. Woodard interviewed Edwin at his residence in unincorporated Cook County, with J.B. and A.B. present on October 3, 2018. Woodard then returned with two Cook County Sheriff's Office (CCSO) police officers at approximately 8:00 p.m. A police officer asked Woodard if the alleged incident occurred in Cook County and she refused to answer. Woodard then attempted to coerce Edwin to agree to a "safety plan" and transfer custody of J.B. and A.B. to Erika. This entire incident was recorded on the CCSO police body cameras.

99. Edwin ejected Woodard after J.B. denied Edwin ever choked him. Woodard initially refused to leave, and Edwin used profanity while ejecting her.

100. Woodard sent Erika's counsel an e-mail on October 5, 2018 recommending Edwin get a mental health evaluation and that his parenting time be supervised. Woodard did not know that Edwin took an exhaustive mental health evaluation with Dr. Rappaport, and that he scored far less of a risk to commit domestic violence than Erika on the psychological testing.

101. On October 9, 2018, Erika filed a petition for emergency order of protection, falsely alleging that J.B. told Dr. Pacheco on October 1, 2018 that Edwin had choked J.B. in Wisconsin. Erika added the October 5, 2018 e-mail from Woodard as an exhibit.

102. The Guardian *ad Litem*, Steve Wasko, a family law attorney, did not interview J.B. or conduct an investigation, as is required by 750 ILCS 5/506(a)(2). Nor did Woodard obtain an order to conduct an investigation in a civil domestic relations proceeding as

required by 20 ILCS 505/5(t) and the Fourth Amendment of the United States Constitution.

103.   On October 10, 2018, Erika Bush testified under oath that J.B. allegedly told Dr. Pacheco that Edwin had choked him two months prior in Wisconsin.  Judge Carr granted the emergency order of protection, which was on the record.  Edwin's parenting time with J.B. and A.B. was suspended entirely.  Judge Carr stated he did not read Edwin's responsive pleadings.  Judge Carr further stated Edwin's ejection of Woodard and CCSO police factored in his decision to grant the emergency order of protection.

104.   On October 15, 2018, Edwin appealed the emergency order of protection, but it was denied for lack of jurisdiction because the supporting record and memorandum was technically filed one second late under Illinois Supreme Court Rule 307(d).

105.   On November 6, 2018, Edwin presented an emergency motion for reconsideration to Judge Carr in a proceeding that was on the record.  Edwin informed Judge Carr he obtained the body camera footage through FOIA and J.B. denied the false choking allegation on video.

106.  Edwin further argued that Woodard was violating a 2014 federal settlement agreement that DCFS cannot ask for a safety plan without first conducting a Child Endangerment Risk Assessment Protocol (CERAP) and concluding DCFS has grounds to take protective custody.  Edwin indicated Woodard stated on video she did not have grounds to take protective custody.  Further, a police officer told Woodard Edwin had the right to eject her.  Woodard responded, "exactly."

107.   On November 6, 2018, Judge Carr denied the motion for reconsideration, which he never read, again citing Edwin's ejection of Woodard and CCSO police as a valid basis for the entry of the emergency order of protection.

b.   The November 30, 2018 Procedural and Substantive Due Process Violation, And Substantive Due Process Count of  *J.B. et al v. Woodard et al*

108.   On November 29, 2018, DCFS "unfounded" the investigation started by Erika and closed the case.

109.   On November 30, 2018, Erika's the emergency order of protection was set for plenary hearing.  The hearing was held on the record.

110.   On November 30, 2018, Erika Bush and Tiffany Woodard testified on Erika's case in chief.  Edwin cross-examined both of them.

111.   Edwin called Dr. Pacheco, who testified that Erika made the choking allegation on October 1, 2018, not J.B. – contradicting Erika's filings and prior oral testimony. When Edwin was examining the Guardian *ad Litem* in his case in chief, Judge Carr interrupted and indicated he would deny the order of protection, inducing Edwin to rest.

112.   Judge Car terminated the hearing and denied the order of protection.  Judge Carr then *sua sponte*, on this own motion, made a finding of serious endangerment against Edwin under 750 ILCS 603.10, when there was no notice or motion set for hearing on that statute.  Edwin objected, noting that his girlfriend eyewitness was in the hallway waiting to testify, he had yet to direct examine Erika Bush, present his own testimony, evidence and argument.

113.   In the November 30, 2018 Order, Judge Carr ordered Edwin attend anger management counseling for ejecting Woodard and the CCSO police officers on

October 3, 2018. Edwin's parenting time was suspended indefinitely until the court

was "satisfied."

114.   In the November 30, 2018 Order, Judge Carr ordered Edwin engage in anger

management counseling before he could get his parenting time back. Edwin started

seeing Dr. John Palen voluntarily to move the process as fast as possible.

115.   On December 20, 2018, Dr. John Palen was appointed as the anger management

counselor, and Edwin was granted leave to pick up J.B. from school on December

21, 2018 for a single counseling session with Dr. Palen.

116.   On December 21, 2018, Edwin J.B. and Dr. Palen had a counseling session,

which Edwin audio-recorded. Dr. Palen was confused what the purpose of this

session was, because under Illinois statute, 750 ILCS 5/607.6(d), counseling

sessions are confidential and cannot be used in any manner in litigation. Under state

law and his own code of professional ethics, he was unable to give a report of this

session, which is what Judge Carr ordered.

117.   During this session in Dr. Palen's office, J.B. stated he could not remember the

alleged non-incident from August 3, 2018 when asked repeatedly. J.B. had no idea

why he could not see his father, said he and A.B. were crying repeatedly to see their

father, J.B. said he was not scared of his father, was never harmed by his father,

wanted to spend time with his father, and wanted to speak to Judge Carr and even

Woodard to end the separation. J.B. further stated Erika Bush had repeatedly

slapped him in the face and pulled his hair, but she allegedly does not do it anymore.

At the end of the session, the following exchange occurred:

> EDWIN: Your mom told the judge that I had choked you
> J.B.: Well then I have to tell my mom that OK, now I understand.

23

> EDWIN: You understand?
> DR. PALEN: You didn't do anything wrong. This is an adult problem, very confusing. But you are going to see your dad and get this cleared up.
> J.B.: When am I going to see my dad?

118. On December 24, 2018, Edwin filed an emergency motion to reinstate his parenting time, appoint an evaluator under 750 ILCS 5/604.10 who could give a report to the court, and to continue the scheduled January 24, 2019 trial date.

119. Edwin attempted to present this motion on December 27, 2018 but Judge Carr was on Christmas vacation and the judge sitting in his stead continued the emergency motion. The Guardian *ad Litem* and Erika's counsel failed to attend court.

120. On January 7, 2019, Judge Carr was back from Christmas vacation, but Erika's counsel and the Guardian *ad Litem* failed to attend court. The matter was continued a second time to January 10, 2019.

121. On January 10, 2019, Edwin presented this motion a third time, in a proceeding that was on the record. The Guardian *ad Litem* (GAL) informed Judge Carr that J.B. told him independently that he wants to see his father. The GAL further suggested that the scheduled January 24, 2019 trial date be postponed in lieu of a report.

122. On January 10, 2019, Judge Carr refused to hear the continuance motion, or to appoint an evaluator who could give a recommendation to the court. When it came to reinstating Edwin's parenting time, Judge Carr stated that if it was up to him, Edwin would have no parenting time. Parenting time was not reinstated. Judge Carr stated again the basis of the parenting time suspension was the ejection of the DCFS investigator and CCSO police on October 3, 2018.

24

123.   On January 23, 2019, Edwin filed a Petition for Substitution of Judge for Cause, which was summarily denied that day by Judge Renee Goldfarb, with no written findings.

124.   On January 24, 2019, Edwin appeared in person and objected to proceeding to trial.  Judge Carr overruled the objection and proceeded to trial *ex parte*.  Edwin left the court because he was unable to present testimony, exhibits or witnesses, or have a remotely fair trial.  Edwin did not disclose an exhibit or witness list because he had no expert witness to call who could report on the December 21, 2018 counseling session.

125.   On January 24, 2019, Judge Carr "reserved" Edwin's parenting time, meaning Edwin would have no parenting time but the matter would be revisited.  Due to Edwin recording the counseling session, Dr. Palen was replaced and two other counselors were appointed as conditions precedent to Edwin having parenting time.  Judge Carr further indicated that he had suspended Edwin's parenting time for ejecting the DCFS and CCSO police in the November 30, 2018 temporary order, but did not include an endangerment finding in his oral pronouncement.  There was no endangerment finding entered into the judgment.

126.   On February 11, 2019, Edwin's new counsel appeared and requested that judgment not be entered, to which Judge Carr agreed.  On February 13, 2019, Judge Carr entered the judgment.

c.   Compliance With the Void Circuit Court Judgment And Still No Parenting Time

127.   Despite a forthcoming successful appeal, Edwin complied with the terms of the February 13, 2019 judgment that would ultimately be vacated.

25

128.  Edwin spent 45 hours with Dr. John Palen in individual counseling from early December 2018 until early 2020.  He was required to attend a few sessions, but then continued voluntarily due to the trauma impacted by the court.

129.  Edwin successfully completed the required six hours with Dr. Tom Golebewski in July, 2019, who was appointed to as the anger management counselor.

130.  Judge Carr refused to grant parenting time to Edwin after the conclusion of the counseling sessions.

131.  On September 20, 2019, Judge Carr appointed a "reunification counselor," Dr. Ron Dachman.  Dr. Dachman would be in charge of "reunifying" J.B. and A.B., despite there being no finding of endangerment in the February 13, 2019 Judgment.

132.  On October 8, 2019, Edwin filed a petition for indirect civil contempt for Erika Bush not cooperating with "reunification" counseling.

133.  On December 18, 2019, Edwin filed a second petition for indirect civil contempt for Erika Bush not cooperating with "reunification" counseling.

134.  On March 5, 2020, Edwin would finally meet with J.B. for the "reunification counseling, over five months since Dr. Dachman was appointed.   This meeting was audio-recorded and J.B. still had no clue why he could not see his father.

135.  On March 14, 2020, Edwin met with J.B. and A.B and then Dr. Dachman withdrew.  This session was also audio-recorded.  Parenting time was still not re-instated.

d.  Events Leading To The Appeal of the February 13, 2019 Judgment and *J.B. et al v. Woodard et al* Is Filed

136.  On March 8, 2019, Edwin's counsel filed a motion to vacate the judgment under 735 ILCS 5/2-1203 that would not be heard until July 17, 2019.

26

137.   On May 10, 2019, Edwin filed a second Petition for Substitution of Judge for Cause.  Edwin alleged the lack of parenting time was an ongoing due process violation for lawfully ejecting the DCFS caseworker, and Edwin was about to file a complaint in federal court over the violation of federal law in which Judge Carr made himself an accomplice.

138.   On June 5, 2019, in a written opinion, Judge Timothy Murphy found Judge Carr had committed error because there was no motion set for hearing under 750 ILCS 5/603.10 on November 30, 2018.  However, Judge Murphy indicated the error did not reach to the actual bias and prejudice standard, and the appellate court was the more proper remedy.

139.   On June 10, 2019, Judge Carr stated again he suspended Plaintiffs' parenting time because of the ejection of the DCFS caseworker and police.

140.   On June 18, 2019, *J.B. et al v. Woodard et al* was filed in the Northern District of Illinois federal court.   Count I seeks to declare that 750 ILCS 5/607.6(d) unconstitutionally violates due process rights by barring all statements from counseling sessions with no exception or waiver.   Count III is a procedural due process claim for DCFS attempting to coerce a "safety plan" with no grounds to take protective custody or subject matter jurisdiction, and interjecting itself into the pending civil dissolution case with no court order, while taking no action under the Juvenile Court Act.  Count II is a substantive due process count for the loss of familial integrity, association, privacy and autonomy arising from the unlawful attempted coercive safety plan by DCFS, the damages arising from Judge Carr's punitive orders entered without due process.

141.   On June 27, 2019 and July 22, 2019, Judge Carr denied two separate motions to declare void and vacate the November 30, 2018 temporary order on due process grounds.  On June 27, 2019, Judge Carr stated again he suspended Plaintiffs' parenting time because of the ejection of the DCFS caseworker and police.

142.   On July 1, 2019, Edwin filed a third substitution of judge for cause petition, alleging that violation of basic procedural due process rights and prolonged deprivation of substantive due process rights is *per se* actual judicial bias and prejudice.  This petition was denied that day by Judge David Haracz, who refused to reach the merits because he erroneously asserted judges can only be substituted due to extra-judicial sources of bias.

143.   On July 17, 2019, Judge Carr denied the motion to vacate the February 13, 2019 judgment, and denied a separate motion to re-open proofs.  That same day, Edwin filed a notice of appeal.

144.   On March 20, 2019, June 14, 2019 and July 16, 2019, Dr. John Palen attended court to attempt to testify about the December 21, 2018 counseling session with J.B., authenticate the December 21, 2018 audio-recording, but Judge Carr refused to hear from Dr. Palen.

145.   On July 22, 2019, Judge Carr refused to admit the audio-recording of the December 21, 2018 counseling session into evidence.

146.   On July 22, 2019, Judge Carr denied a post-judgment petition by Edwin to vacate the February 13, 2019 Judgment because the judgment was non-final and unlawfully bifurcated under 750 ILCS 5/401(b).  Judge Carr also denied a petition to vacate the

judgment because there was no finding of endangerment in the February 13, 2019 judgment, yet Plaintiffs had no parenting time.

e. The Illinois Appellate Court Vacates The Parenting Time Portion of the February 13, 2019 Judgment

147. On December 13, 2019, the Illinois Appellate Court entered a Memorandum Opinion and Order on an appeal of a non-final judgment. The court vacated the parenting time portion of the judgment for dissolution of marriage, and remanded with instructions, and found the judgment was unlawfully bifurcated pursuant to 750 ILCS 5/401(b).

148. After conducting a word search through the January 24, 2019, trial transcript, the appellate court agreed with Edwin that there was no finding of child endangerment. Since the court remanded due to the bifurcated judgment, it did not reach the substance of whether Judge Carr could have made a finding. "To preserve the status quo and in the interest of consistency with the circuit court's intent," the appellate court reformed the vacated judgment into a temporary order, using Illinois Supreme Court Rule 366(a)(5).

149. As a result, Edwin's relationship with J.B., A.B. was completely severed since February 13, 2019 without a finding of unfitness or endangerment as a matter of law.

150. In ¶84, the appellate court noted that during the *ex parte* trial, Judge Carr "simply recounted that after the November 30 hearing, it had suspended Edwin's parenting time." The appellate court did not reach Edwin's six procedural and substantive objections to the November 30, 2018 order, finding that the non-final judgment superseded the temporary order. Accordingly, despite Judge Murphy's June 5, 2019

assertion that Edwin's procedural due process objections were properly addressed to the appellate court, it never ruled on Edwin's procedural and substantive objections to the November 30, 2018 Order.

f.  **Plaintiffs Constitutional Rights Continue To Be Infringed After The Appellate Court Ruling, Judge Carr Is Openly Policymaking and Enforcing His Own Unwritten, Unconstitutional Orders**

151.  On December 20, 2019, Edwin presented an emergency petition for a declaratory judgment to Judge Carr that Plaintiffs were constitutionally entitled to parenting time before the appellate court mandate was returned, as there was no finding of endangerment. Edwin asserted that the statutory and constitutional presumption in 750 ILCS 5/602.7(b) that parents are presumed fit unless a finding to the contrary should be textually applied. Non-custodial parents are entitled to reasonable visitation absent a finding of unfitness. 750 ILCS 5/602.8(a).

152.  On December 20, 2019, Judge Carr indicated he would openly disregard the binding mandate of the appellate court, 750 ILCS 5/602.7(b) and the United States Constitution. He stated he would continue on his own the November 30, 2018 Order, which was entered without due process and the appellate court held was superseded:

> THE COURT: So be that as it may, I entered an order before because I felt that the child -- there was serious endangerment for the child. I still believe that. Okay. I believe that what I did was right." R 38:23 - 39:3.

153.  Six minutes later, Judge Carr openly stated he would continue to restrict Edwin's parenting time, despite there being no finding of endangerment in the February 13, 2019 vacated judgment:

> THE COURT: Okay. I said you can see your child, but it's going to be supervised.
> MR. BUSH: I'm not agreeing to supervised visitation.
> THE COURT: Oh, okay. Well, that's it. Okay. The bottom line is -

MR. BUSH: You can't do that. That's a restriction. You need to have --
read the Appellate opinion. R 46:20 - 47:4.

154.    Later during the proceeding on December 20, 2019, Judge Carr openly stated he

was policymaking and enforcing his own policy countermanding the appellate court

order, while addressing Erika Bush:

THE COURT: "So like it or not, so you don't, I suppose the bottom line is
this. If you don't go, then we don't need Dr. Dachman and I'll just reinstate
whatever I think I am going to do. So I want you to go to Dr. Dachman."
R39:10-14.

155.    On February 13, 2020, Edwin filed a recusal motion for Judge Carr's statements

prejudging the appellate court ordered hearing on remand.  On February 14, 2020,

Judge Carr denied the recusal motion.


g.  Exhaustion of State-Level Remedies Through The State Appellate Courts

156.    On January 4, 2020, Edwin petitioned for a rehearing before the appellate court on

the under Rule 367 on the grounds that:

"All parents are presumed fit and the courts do not have authority to restrict parenting
time unless there is a finding to the contrary (750 ILCS 5/603.10), meaning Edwin
should have unrestricted access to the children on an unrestricted basis until there is
a hearing on remand."

It was filed one day late, and the appellate court lacked jurisdiction to review that

petition.

157.    On January 28, 2020, Edwin timely filed a Petition for Leave to Appeal (PLA) to

the Illinois Supreme Court.  This PLA argued that any state court, including an

appellate court, cannot infringe on a parent's substantive due process rights, even

temporarily, without a finding of unfitness or endangerment   The PLA was denied

on February 24, 2020.

158.   On March 23, 2020, Edwin filed an Emergency Motion to Establish a Parenting Schedule in the circuit court, shortly after the Covid-19 emergency procedures were enacted.  Edwin complained in the March 23, 2020, emergency motion that Erika was "restrictive gatekeeping," and was refusing to agree to a temporary parenting schedule.  The emergency motion was denied by the emergency judge on call, The Honorable Lionel Jean-Baptiste.

159.   On June 18, 2020, the mandate was returned to the circuit court, after being delayed for four months in the appellate courts due to the Covid-19 closures.

160.   On June 23, 2020, Edwin re-noticed the March 23, 2020 emergency motion to Judge Carr.  Judge Carr refused to grant a temporary parenting schedule, and entered no orders after the June 23, 2020 court date, including a continuance motion – effectively taking the dissolution proceeding off-call.

161.   On July 6, 2020, Edwin filed a Substitution of Judge for Cause petition for continuing to deny Plaintiffs any parenting time.  He complained about the prejudging statements on December 20, 2019.  Second, Judge Carr briefly arrested Edwin that same date after refusing to hear Edwin's motion to strike a civil contempt petition.  Thirdly, Judge Carr referred Edwin to the Illinois Attorney Registration and Disciplinary Commission (ARDC) on October 22, 2019 for recording Erika breaking Illinois' disorderly conduct statute while attempting to see J.B. at a pulmonologist appointment on September 25, 2019.

162.   While Presiding Judge Grace Dickler had jurisdiction over this case, Edwin presented his March 23, 2020 emergency motion for a temporary parenting schedule

four times. On August 5, 7, 12 and 18, Judge Dickler refused to hear Edwin's emergency motion.

163. On August 24, 2020, Edwin filed an Emergency Motion for Supervisory Order to the Illinois Supreme Court under Supreme Court Rule 383. He complained that Plaintiffs' substantive due process rights had been violated since February 13, 2019 as a matter of law, as there was no finding of endangerment. He prayed that Presiding Judge Dickler be ordered to hold a hearing on his March 23, 2020, emergency motion to establish a temporary parenting schedule. He further prayed that a parenting schedule be entered consistent with 750 ILCS 5/602.7(b) and the United States Constitution immediately. The Supreme Court denied his motion on September 3, 2020.

164. On August 31, 2020, Judge Regina Scannicchio denied the substitution of judge for cause petition in a written memorandum opinion and order.

h. *J.B. et al v. Woodard et al* Progresses to the 7th Circuit Court of Appeals

165. On January 14, 2020, The Hon. Sharon Johnson Coleman dismissed the Complaint under *Younger* abstention, even though the state court judgment was partially vacated on December 13, 2019. She further held Plaintiffs lacked standing under *Ex Parte Young* (1908) because the DCFS defendants did not have some connection to the enforcement of 750 ILCS 5/607.6(d).

166. On February 10, 2020, Plaintiffs appealed to the 7th Circuit Court of Appeals.

167. On April 23, 2020, Plaintiffs filed their appellant brief.

168. On August 26, 2020, Attorney General Kwame Raoul filed his appellee brief.

169. On September 11, 2020, Plaintiffs filed their reply brief.

170.  On September 15, 2020, the Seventh Circuit scheduled oral argument for December

16, 2020

i.  <u>With No Hearing On Remand, Judge Carr Enters An Emergency Order of Protection For
Edwin Merely Trying to See J.B. and A.B.</u>

171.  On August 26, 2020, the Illinois Attorney General filed a response brief in *J.B. et.

al. v. Woodard et. al*. (7th Cir. 20-1212).  In the "statement of the case" section,

Attorney General Raoul told the Seventh Circuit:

> "During a doctor's appointment on October 1, 2018, <u>Erika told</u> J.B.'s
> pediatrician that Edwin had choked J.B. Doc. 1 at 8. The doctor called the
> DCFS hotline to report the suspected abuse, and Woodard, a DCFS
> investigator, interviewed J.B. at his school the next day. Id. at 8-9. On
> October 3, Woodard spoke to Erika at her home, and <u>Erika **_again_** stated
> that Edwin choked J.B</u>. Id. at 9."  (emphasis added).

172.  On August 31, 2020, Edwin filed an emergency motion for temporary change of

residential custody in the circuit court, citing Attorney General Raoul's filing.

Edwin argued that this finding from the highest law enforcement official in the state

supported his continual assertion that Erika had lied on October 10 and November

30, 2018.

173.  On September 2, 2020, Erika responded by filing a motion for supervised

parenting time as a non-emergency.  She alleged that Edwin tried to see J.B. and

A.B. by buzzing the intercom at her condominium on August 15, 2018.  She further

alleged that Edwin placed a sign outside her condominium building on August 18,

2018.  Erika alleged "the November 30, 2018 Order relative to parenting time

remains in full force and effect," and added the order held to be superseded by the

appellate court as an exhibit.

174.  Both motions were presented on September 2, 2020, and the parties were given 21

days to reply. The competing motions were to be set for hearing on October 5, 2020, with the hearing on remand still not scheduled.

175.   On September 23, 2020, Edwin attempted to see J.B. at his school in Park Ridge. When the principal contacted Erika, she claimed Edwin had no rights to see J.B. and claimed to the principal the November 30, 2018 superseded order was still effective. Erika further falsely claimed that Edwin had not complied with the terms of the vacated judgment.

176.   Edwin responded to the principal that there was no order preventing Edwin from seeing J.B. and A.B.  Further, Edwin stated he was J.B. and A.B.'s attorney of record in federal court, was entitled to see his clients, and gave the principal a copy of the *J.B. et al. v. Woodard et al* reply brief.

177.   The principal refused to provide J.B. and then called the Park Ridge Police after Edwin reiterated he has parenting rights.  Edwin then left the premises without incident.

178.   On September 24, 2020, Erika filed an emergency petition for order of protection for Edwin attempting to see J.B. on September 23, 2020 at his school.  She further claimed Edwin attempting to see J.B. and A.B. on August 15, 2020 was grounds for an emergency order of protection.  Erika also complained of Edwin's sign which requested a wellbeing check for J.B. and A.B. by the Park Ridge Police on August 18, 2020.  Although those two complaints were originally plead as non-emergencies three weeks prior, Erika now claimed those two incidents constituted an emergency.

179.   In Erika Bush's September 24, 2020 affidavit, she alleged the November 30, 2018 order was still effective and attached it as an exhibit again.

35

180.   On September 28, 2020, Edwin filed a recusal motion because the subject matter

of Erika's petition involved the subject matter of *J.B. et al v. Woodard et al*.  Edwin

asserted Judge Carr was conflicted out because he is responsible for the damages in

Count II.

181.   On September 28, 2020, Judge Carr held an emergency hearing on the emergency

petition for order of protection and granted it.  First, Judge Carr denied the recusal

motion.  The following exchange occurred:

MR. BUSH: You denied the plenary order of protection [on November 30, 2018]
and then you entered on your own motion, which you stated on June 27, 2019, in
your own words:  "I found on my own," you made a *sua sponte* finding without
giving me a hearing, without there being a motion set for hearing at all. And you
violated my due process rights because in the record, I can go in and I can. I cited
for this in the November 30th transcript, which is part of the recusal motion. And I
can go and I can quote you the exact words that you said that the ejection, the lawful
ejection of the case worker and the sheriff's deputy indicated an anger problem. OK,
well, that is a violation of public policy.

THE COURT: Hold on, I never said that the ejection was, I said the language that
you used in what you said when everybody was there. Why don't you remember
what you said at that time?

MR. BUSH: I do. I have it absolutely memorized. I can tell you what exactly would
you like to know?

THE COURT: Go ahead and finish.

MR. BUSH: I said I told you. You allege that. I said, get the f[***] out of my house.
That's what you alleged that I said.

THE COURT: That is what the testimony was.

MR. BUSH: Well, the video, which you never heard because you never allowed me
to present a case said, quote, You sons of b[******], you get the hell out of my
house. That's after my son said, quote, my dad did not choke me.

THE COURT: Alright. Cut to the chase. R 9-10.

182.   Judge Carr found Edwin placing the August 18, 2020 sign requesting a wellbeing

check from the Park Ridge Police was harassment, and the sole grounds for the

emergency order of protection. He did not find the August 15, 2020 "intercom

incident" and September 23, 2020 "school incident" were valid reasons for an order

of protection.

183. Without making a finding of endangerment or a finding under the best interest

standard, Judge Carr ordered supervised parenting time, which he indicated he

wanted to do on December 20, 2019. Despite 750 ILCS 60/214(b)(7) statutorily

requiring a parenting schedule, Judge Carr did not enter a parenting schedule.

184. On September 30, 2020, Edwin filed a notice of interlocutory appeal to the

Illinois appellate court.

185. On October 13, 2020, Edwin filed an appellate brief. Edwin argued Judge Carr

failed to make a finding under the best interest or the endangerment standard to

Edwin to restrict his parenting time, the offending sign was never entered into

evidence, Edwin's conduct was reasonable under the circumstances, inadmissible

hearsay testimony was admitted, the offending sign contained truthful statements

and was constitutionally protected speech. Edwin further argued that the state law

was violated by enforcing 750 ILCS 60/214(b)(7) of the Domestic Violence Act,

which allows restricting parenting time on the best interest standard, when the

Illinois Marriage and Dissolution of Marriage Act requires serious endangerment.

Edwin further argued that statute is unconstitutional.

186. On October 26, 2020, the First District Appellate Court affirmed the emergency

order of protection. In that order, the appellate court denied Edwin's contempt

motion for the Cook County Circuit Court refusing to hold a hearing on its

December 13, 2019 ordered remand. The appellate court claimed it does not have jurisdiction to enforce a prior order by contempt. The appellate court also affirmed the denial of the recusal motion because it erroneously claimed Edwin was suing Judge Carr in *J.B. et al v. Woodard et al.*, and state law does not require recusals in that instance.

j. <u>The Emergency Order of Protection "Self-Combusted" And There Is No Order In Effect</u>

187. Illinois law states that emergency orders of protection cannot be extended without agreement. 750 ILCS 60/220(e). The Illinois appellate courts have held an emergency order of protection "self-combusts" by operation of statute after 21 days. Illinois appellate courts do not vacate such orders because there is no order to vacate.

188. On October 8, 2020, Judge Carr entered a "return date" for the emergency order of protection, which cannot be more than 21 days after entry of the original order.

189. On October 13, 2020, Judge Carr entered an order that completely vacated the October 8, 2019 order, thereby striking the October 19, 2019 return date.

190. On October 19, 2020, Judge Carr purportedly extended the emergency order of protection to December 15, 2020. Edwin's objection was entered on both orders.

191. On October 21, 2020, Edwin filed a jurisdictional statement to the Illinois appellate court noting the emergency order of protection "self-combusted" by operation of Illinois law and appellate court precedent.

192. On October 26, 2020, the appellate court did not address the purported extension at all.

193. The October 19, 2020 "extension" is not valid because Judge Carr expressly countermanded Illinois law, 750 ILCS 60/220(e). Judge Carr struck the October 19,

2020 return date, thereby having no jurisdiction to make any substantive rulings. Judge Carr also lacked jurisdiction because the emergency order of protection was on appeal. Under state law, emergency orders protection can only be reformed into an interim or plenary order of protection, after a hearing.

194. There is no operative order restricting Edwin, J.B. and A.B.'s parenting time. Edwin exhausted his state-level remedies, and an extraordinary circumstance exception to *Younger* applies when state appellate courts fail to review legal objections.

195. Abstention principles do not apply due to the nature of the civil proceeding. Edwin already brought his argument to the Illinois Supreme Court twice, and exhausted his state-level remedies. Moreover, there is no operative order which Rooker-Feldman would otherwise bar.

196. The appellate court's December 13, 2019 ordered hearing on remand has not even been scheduled.

## V.    CLAIMS FOR RELIEF

### A. COUNT I: DECLARATORY RELIEF THAT PLAINTIFFS' CONSTITUTIONAL RIGHTS TO FAMILIAL ASSOCIATION, INTERGRITY, PRIVACY AND AUTONOMY HAVE BEEN VIOLATED AND CONTINUE TO BE VIOLATED BY DEFENDANT, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION, AMENDMENT XIV.

197. Plaintiffs incorporate paragraphs 1 through 196 as if fully set forth herein.

198. Plaintiffs A.B., J.B. and Edwin Bush bring this count against Defendant John T. Carr in his official capacity under color of state law.

199.  The Defendant sued in this count is sued for completely severing the contact of Plaintiffs when their father, Edwin Bush, is not found to be unfit or an endangerment as a matter of law.

200.  Defendant violated Plaintiffs' substantive due process rights entirely from November 30, 2018 to this present date.

201.  The United States Supreme Court has repeatedly stated that biological parents and children have fundamental liberty interests to familial association, privacy, autonomy and integrity, and the state cannot interfere unless there is a compelling state interest. Before asserting a compelling state interest, the biological parent must be found unfit, and fit parents are presumed to act in the children's best interest. Pursuant to state and federal law, non-custodial parents not found to be unfit are entitled to reasonable visitation rights.

202.  This count seeks declaratory relief that Plaintiffs' substantive due process rights under the United States Constitution, Amendment XIV have been violated, and continue to be violated.

203.  The declaratory relief Plaintiffs seek are authorized by 28 U.S.C. § 2201.

204.  The actions and conduct of the Defendant in this count caused injury to each of the plaintiffs.

**B. COUNT II: DECLARATORY RELIEF THAT DEFENDANT ENGAGED IN A PROLONG AND CONTINUING ABUSE OF POWER BY RETALIATING AGAINST PLAINTIFFS FOR PURSUING *J.B. ET AL V. WOODARD ET AL*, BY COMPLETELY SEPARATING THEM FOR THE DURATION OF THE ONGOING CASE, INTERFERING TOTALLY WITH THE ATTORNEY-CLIENT RELATIONSHIP, PREVENTING THE GATHERING OF EVIDENCE, ATTEMPTING TO SURVEIL THEM BY ORDERING SUPERVISED VISITATION WITH NO LEGAL AUTHORITY, VIOLATING THE MANDATE OF THE APPELLATE**

**COURT TO HOLD A HEARING ON REMAND, AND INTENTIONALLY CAUSING IRREPARABLE HARM IN HIS CAPACITY AS JUDGE IN THE DISSOLUTION AND CUSTODY PROCEEDING, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION, AMENDMENT XIV.**

205. Plaintiff incorporates paragraphs 1 through 204 as if fully set forth herein.

206. Plaintiffs A.B., J.B. and Edwin Bush bring this count against Defendant John T. Carr in his official capacity under color of state law.

207. 42 U.S.C. § 1983 gives a remedy to parties deprived of constitutional rights by an official's abuse of his position.

208. When a § 1983 claim is based on a violation of substantive due process or an incorporated guarantee of the bill of rights, the plaintiff need not exhaust state administrative remedies.

209. Individuals are protected against arbitrary action by state government. The Due Process Clause places substantive limitations upon state action.

210. The substantive limitations protect the individual against a state actor's conduct that shocks the conscience or runs counter to fundamental notions of fairness.

211. By barring certain government actions regardless of the fairness of the procedures used to implement them, due process serves to prevent government power from being used for purposes of oppression.

212. Whether a state actor's conduct amounts to a constitutional violation depends on the totality of the circumstances.

213. Plaintiffs have a due process right to a disinterested judge, and to one who has not prejudged an outcome.

41

214.  The Defendant sued in this count is sued for completely severing the relationship between Plaintiffs without Edwin being found to be unfit.  Defendant then retaliated and abused his power as the judge in the underlying dissolution and custody case by completely separating Plaintiffs during the entirety that *J.B. et al v. Woodard et al* has been pending since June 18, 2019.  Defendant is responsible for the prolonged substantive due process damages in Count II of that lawsuit, and those damages only continue to rise.  Defendant has interfered totally with the attorney-client relationship and Plaintiffs' ability to gather evidence and prosecute that federal lawsuit.  Despite lacking legal authority to order supervised visitation, Judge Carr stated he will only allow supervised visitation, which amounts to surveilling Plaintiffs, breaching the attorney-client privilege and attempting to gather unfavorable evidence to discredit Plaintiffs and their claim.  Defendant would surveil Plaintiffs through his agent whom he appointed, the Guardian *ad Litem*, Steve Wasko, who completely abrogated his fiduciary duty the entirety of his appointment.  On October 22, 2019, after Defendant ordered Steve Wasko to report Edwin to the ARDC for lawfully recording, he said Steve Wasko is doing a "great job."  Defendant refuses to abide by the appellate court's mandate to hold a hearing on its remand of the final judgment.

215.  This count seeks declaratory relief that Plaintiffs' substantive due process rights under the United States Constitution, Amendment XIV have been violated, and continue to be violated.

216.  The declaratory relief Plaintiffs seek are authorized by 28 U.S.C. § 2201.

217.  The actions and conduct of the Defendant in this count caused irreparable injury to each of the plaintiffs.

C. **COUNT III: INJUNCTIVE RELIEF TO ENJOIN DEFENDANT FROM FURTHER ACTING IN A POLICYMAKING AND ENFORCEMENT CAPACITY TO RESTRICT OR DENY PLAINTIFFS' FUNDAMENTAL FAMILIAL RIGHTS WITHOUT A FINDING OF UNFITNESS, AND TO MANDATE DEFENDANT SCHEDULE A HEARING ON THE STATE APPELLATE COURT'S MANDATED REMANDMENT AND THEN RECUSE HIMSELF.**

218. Plaintiff incorporates paragraphs 1 through 217 as if fully set forth herein.

219. Plaintiffs A.B., J.B. and Edwin Bush bring this count against Defendant John T. Carr in his official capacity under color of state law.

220. The Supreme Court takes a functional approach to judicial immunity. The touchstone for a judicial act is the performance of the function of resolving disputes between parties, or authoritatively adjudicating private rights.

<u>Unconstitutional Policymaking</u>

221. When a state court judge oversees unwritten customs and practices that could be written but are not, that judge is deliberately acting in a policymaking capacity. These acts or omissions do not arise out of each judge acting to resolve disputes between parties in court, but are a form of legislating. When these unwritten customs and practices violate the Constitution, the judge is liable to injunctive relief under 42 U.S.C. § 1983. In this circumstance, the state actor cannot point the finger at a private party who may approve of the relief, the court is the moving force of the deprivation.

222. Cook County domestic relations judges have enormous autonomy to make their own policies, and are given a broad grant of authority to operate independently within their courtroom. The best interest of the child standard is inherently amorphous and vague, and is almost always an exercise in policymaking. As a practical matter, there is no authority which constrains the final policymaking of domestic relations judges,

43

given the enormous cost and effort required to remedy a single violation. There is often no written record to appeal. Interlocutory orders are not subject to any meaningful review. That federal courts often abstain (wrongly), refuse to modify a custody decree or review a state court order that is unconstitutional, there is virtually no federal oversight. There is almost no state-level supervision as well.

223.   Defendant was and continues to be policymaking by claiming a domestic relations judge can restrict a parent's fundamental rights without being found to be unfit. That is unconstitutional and there is no compelling governmental interest as held by the United States Supreme Court. Accordingly, this facially unconstitutional policy and practice must be enjoined.

224.   Defendant was and continues to be policymaking by claiming that lawfully ejecting state actors violating the constitution with no subject matter jurisdiction, while using explicit language, constitutes a basis to totally deprive a parent-child relationship. Individuals have a right to interrupt and criticize civil and police authority, to eject any trespasser from their dwelling, to demand civil authority follow their own procedures, and to repel an illegal search and attempted seizure. Defendant's own custom and unwritten policymaking leaves anyone with ordinary intelligence, much less an attorney who passed two state bars, completely blindsided and could never predict there would be such consequences. Defendant's own policymaking is in fact a violation of public policy and several constitutional rights, and is void. Accordingly, this policy must be enjoined.

225.   Defendant was and continues to be policymaking when he entered an emergency order of protection against Plaintiffs on September 28, 2020. Plaintiff Edwin erected

two signs outside Erika Bush's condominium on August 18, 2020 – only once. He then placed a sign outside the Park Ridge Police Department fifteen minutes later requesting a wellbeing check of J.B. and A.B. The sign outside Erika Bush's residence protested the failure of the Cook County courts and the police to properly address restrictive gatekeeping parents, which is a serious pathology that is harmful to children. The bottom of the sign requested the police officer to tell J.B. and A.B. that their father loves them. Officer Czwarniak of the Park Ridge Police in fact conducted a wellbeing check. Erika Bush refused to allow Edwin to see his children on August 15, 2020, when he was conducting his own wellbeing check. It was totally reasonable to request a wellbeing check from the police three days later, especially when Plaintiffs have been unlawfully denied contact for two years. Defendant claiming that Edwin's constitutionally protected speech was harassment is policymaking, and was facially ridiculous, cruel and retaliatory to enter and emergency order of protection on September 28, 2020. Judge Carr then unlawfully continued out that emergency order of protection until December 15, 2020, breaking two more statutes, including a statutory requirement to enter a parenting schedule. On November 2, 2020, Judge Carr claimed he had the authority to violate 750 ILCS 60/214(b)(7) and 750 ILCS 60/220(e), and that Edwin should take up his concerns with the state appellate court, which he in fact already did but the appellate court did not address it. Defendant's policy violates Plaintiffs' substantive due process rights, is contrary to public policy and void. Accordingly, this policy must be enjoined.

226. 750 ILCS 5/102 of the Illinois Marriage and Dissolution of Marriage Act states it is the public policy of Illinois that children of divorced parents have maximum contact

with both parents. That Judge Carr contravened that policy with his own unwritten policy and practices for over two years is itself a violation of public policy. Restrictive gatekeeping is pathological condition that afflicts men and women, in which they try to remove another parent completely. It is closely associated with narcissistic and borderline personality disorder. Courts, its officers and other "cottage industries" surrounding these courts have converted this pathology into a money-making enterprise, which is highly damaging to children. Defendant's policy of flippantly violating constitutional rights of many parents systemically without a finding of unfitness countermands 750 ILCS 5/102, violates fundamental constitutional rights and is a practice that is void as to public policy. Accordingly, this policy must be enjoined.

227. Defendant was and continues to be policymaking by applying the unwritten policy and custom of "reunification counseling." A "reunification counselor" acts as both a counselor and provides opinions and recommendations for custody. There is no statutory authority in the Illinois Marriage and Dissolution of Marriage Act for a court to order "reunification counseling." In fact, counseling sessions are held to be strictly confidential and even privileged. 750 ILCS 5/607.6(d). "Reunification counseling" is an unauthorized fusion of privileged counseling and an evaluation, which is not confidential under 750 ILCS 5/604.10. Under the laws of Illinois, either a counselor or an evaluator can be appointed, not both. These courts excuse their violation of the rights of parents not found to be unfit by restricting their parenting time while claiming they are "reunifying" the parent and child. The courts are not doing the parents and children any favors. A parent who is not found to be unfit can reunify

with their children by themselves. More than likely, the parent's due process rights were violated to begin with, and the children are confused, not alienated. "Reunification counseling" is an excuse for a court to justify their continual unconstitutional intrusions, while making attorneys and cottage industries wealthy in the process. Actual psychologists believe there is no therapeutical value at all, it is a pseudoscience that actually harms parents and children. It is unconstitutional policymaking, a substantive due process violation with a friendly description, and must be enjoined.

Unconstitutional Enforcement Actions

228.  When a state court judge enters an order *sua sponte* in a civil proceeding without a justiciable question properly presented before the court, that judge violates a party's procedural due process rights and exceeds their jurisdiction. The state court judge is acting outside of his adjudicatory capacity. Rather, that judge is deliberately acting in an enforcement capacity, as if he or she is a prosecutor and party to the case. When the state court judge's order violates substantive due process rights or deviates from statutory limitations, they are liable to injunctive relief under 42 U.S.C. § 1983. In this circumstance, the state actor cannot point the finger at a private party who may approve of the relief, the court is the moving force of the deprivation.

229.  On November 30, 2018, Judge Carr entered an unlawful *sua sponte* order suspending Plaintiffs' parenting time without a justiciable question properly presented. He terminated the hearing and denied Plaintiffs notice, motion or an ability to be heard. Any procedural violations of the 750 ILCS 5/603.10 *ipso facto* becomes a substantive due process violation. Substantively, this order violated public policy

and was void.  This unconstitutional enforcement action was effective until either the appellate court order was entered on December 13, 2019, or the mandate was returned on June 18, 2020.

230.   On December 20, 2019, a week after the state appellate court found there was no finding of unfitness or endangerment in the February 13, 2019 judgment, Defendant stated on the record he believed what he did on November 30, 2018 was correct and that he still believes it.  Defendant further stated that he would only grant parenting time with a restriction, which involved surveilling Plaintiffs who have been indirectly suing him since June 18, 2019.  That was plainly contrary to the finding of the appellate court's ruling.  Soon later, Defendant stated: "I'll just reinstate whatever I think I am going to do."  It is clear Defendant is acting in a policymaking and enforcement capacity.  Defendant is so unaccountable, he is violating a mandate of the state appellate court to hold a hearing on the appellate court's remandment.  On October 26, 2020, the appellate court held it lacks authority to enforce contempt of its own prior orders.  To this day, Defendant is acting in an enforcement capacity, enforcing an unwritten order he never noticed or entered after the state appellate court vacated part of the judgment.  Defendant's enforcement action violates fundamental substantive due process rights and must be enjoined.

<u>Prayer For Injunction</u>

231.   The Defendant sued in this count are sued for his actions taken under color of state law.

232. This count seeks emergency temporary, preliminary and a permanent injunctive relief that the aforementioned policymaking and enforcement actions by Defendant violates the Due Process Clause of the United States Constitution, Amendment XIV.

233. The injunctive and declaratory relief Plaintiff seeks against the continued separation of his children from his care and custody is authorized by 28 U.S.C. § 2201 and Fed. R. Civ P. 65.

234. Pursuant to Fed. R. Civ. P. 65, Plaintiffs states that:

    a. As a result of the unconstitutional policymaking and enforcement actions by Defendant, Plaintiffs are being irreparably injured and their substantive due process rights are being violated.

    b. Plaintiff is likely to prevail on the merits of their claim their right to a hearing on remandment from the state appellate court, to a disinterested judge and to basic rights to familial association, autonomy, privacy and integrity, without any finding of unfitness, is a protected constitutional right, and

    c. There is no adequate remedy at law.

235. As relief under this Count, Plaintiff seeks the following temporary, preliminary, and permanent injunctive relief:

    a. A temporary, preliminary and permanent injunction against Defendant continuing to violate their substantive due process rights with unconstitutional policymaking and enforcement actions.

    b. A mandatory injunction that Defendant schedule a hearing on the appellate court's ordered remandment and recuse himself from the state-level dissolution proceeding

236.   . The actions and conduct of the Defendant in this count caused injury to each of the plaintiffs.

**D. COUNT IV: DECLARATORY AND INJUNCTIVE RELIEF TO ENJOIN THE COOK COUNTY DOMESTIC RELATIONS DIVISION FROM SYSTEMICALLY VIOLATING THE FUNDAMENTAL CONSTITUTIONAL RIGHTS OF PLAINITFFS AND PARENTS AND CHILDREN SIMILIARLY SITUATED WITH UNWRITTEN, UNLAWUL AND CONSTITUTIONAL POLICIES, PRACTICES, USAGES AND CUSTOMS, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION, AMENDMENT XIV AND AMENDMENT I.**

237.   Plaintiff incorporates paragraphs 1 through 236 as if fully set forth herein.

238.   Plaintiffs and those similarly situated bring this Count against Defendant John T. Carr in his official capacity under color of state law, and by extension, the Cook County Domestic Relations Division as an entity.

239.   Plaintiff Edwin Bush handles domestic relations cases for other parents victimized by the unconstitutional unwritten policies and practices of the Cook County Domestic Relations Division.  The violations or too extensive and widespread to be enumerated in this space, and are devastating financially and emotionally.

240.   Online forums are a reservoir where thousands of parents complain about similar constitutional violations that occurred to them.  *See, e.g*, "Parental Rights and Due Process" in 1 THE JOURNAL OF LAW AND FAMILY STUDIES, 2:123-150 (1999) (noting the widespread violation of due process in the family law context)

241.   These 28 violations are longstanding and well-known by the state actors supposed to supervise and prevent these abuses, who have knowingly failed to stop these practices.

242. Plaintiff Edwin Bush expects more cases like this to be filed shortly and to be consolidated and possibly certified as a class.

<u>Prayer For Declaratory Relief And Injunction</u>

243. The Defendant sued in this count are sued for actions taken by the Cook County Domestic Relations Division as an entity under color of state law.

244. This count seeks declaratory, and emergency temporary, preliminary and a permanent injunctive relief that the aforementioned unconstitutional policymaking and enforcement actions by the Cook County Domestic Relations Division violates the Due Process Clause of the United States Constitution, Amendment XIV and Amendment I.

245. The injunctive and declaratory relief Plaintiffs and others similarly situated seek are authorized by 28 U.S.C. § 2201 and Fed. R. Civ P. 65.

246. Pursuant to Fed. R. Civ. P. 65, Plaintiffs states that:

    d. As a result of the unconstitutional policymaking and enforcement actions by the Cook County Domestic Relations Division, Plaintiffs and others similarly situated are being irreparably injured and their substantive due process rights are being violated.

    e. Plaintiff is likely to prevail on the merits of their claim there are widespread, systemic and at least 28 concrete unconstitutional policies and practices by the Cook County Domestic Relations Division are enforced.

    f. There is no adequate remedy at law.

247. As relief under this Count, Plaintiff seeks the following temporary, preliminary, and permanent injunctive relief:

    a.   A temporary, preliminary and permanent injunction against the Cook County Domestic Relations Division continuing to violate the constitutional rights of parents with unwritten, unconstitutional policies and practices.

248.   The actions and conduct of the Defendant in this count caused injury to each of the plaintiffs and other parents and children similarly situated.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs J.B., A.B. and EDWIN BUSH respectfully request that this Court enter the following judgments and awards on behalf of Plaintiffs:

(a) A declaratory judgment in their favor on counts I-IV.

(b) An emergency temporary, preliminary and permanent injunction in their favor on count III.

(c) An emergency temporary, preliminary and permanent injunction in their favor on count IV, but this count be stayed pending filing of other complaints to be consolidated and potentially certified as a class.

(d) Such other relief as this Court deems just and equitable.

Dated:  November 9, 2020

RESPECTFULLY SUBMITED:

_____

EDWIN F. BUSH

Edwin F. Bush III

52

Attorney at law
8974 N. Western Avenue Suite #114
Des Plaines, IL 60016
(202) 487-8238

Ted.bush@comcast.net

**Verification**

I, Edwin F. Bush III, declare as follows:

1. I am a Plaintiff in the present case and a citizen of the United States of America.
2. I have personal knowledge of the facts and allegations, including those set out in the foregoing Verified Complaint for Declaratory and Injunctive Relief, and if called on to testify I would competently testify to the matters stated herein.
3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning the entire subject matter are true and correct.  28 U.S.C. § 1746.

Executed on November 9, 2020.

_____

EDWIN F. BUSH